UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re:

Telge Peiris and Ramya Peiris,                          Chapter 13
                                                        Case No. 1-14-4095-NHL

                              Debtors.

---------------------------------------------------------X

Telge Peiris and Ramya Peiris,                          Adv. Proc. No. 1-14-01063-NHL

                              Plaintiffs,

        v.

Ocwen Loan Servicing, LLC d/b/a City
National Bank,

                              Defendant

---------------------------------------------------------X


## DECISION DENYING MOTION



APPEARANCES:

Gus Michael Farinella, Esq.                  Charles Higgs, Esq.
Law Offices of Gus Michael Farinella PC      McCabe, Weisberg & Conway
110 Jericho Turnpike, Suite 100              145 Huguenot Street, Suite 201
Floral Park, NY 11001                        New Rochelle, NY 10801

*Attorney for Telge Peris and Rayma Peiris*   *Attorney for Ocwen Loan Servicing,
                                             LLC, d/b/a City National Bank*



HONORABLE NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Before the Court is a motion by creditor/defendant Ocwen Loan Servicing, LLC ("Ocwen" or the "Movant") to dismiss the adversary complaint of  chapter 13 debtors/plaintiffs Telge Peiris and Ramya Peiris (the "Debtors"), which seeks to "strip off" Ocwen's wholly unsecured second mortgage on the Debtors' principal residence.  In the alternative, Ocwen moves for judgment on the pleadings or for summary judgment.  Ocwen argues that because no party filed a proof of claim on account of the second mortgage, the Court cannot value its claim. Ocwen theorizes that valuation is a prerequisite to lien stripping, and the Debtors thus are not entitled to their requested relief even if the amount of the first mortgage exceeds the value of the property.  For the reasons stated below, the Court rejects this analysis and denies Ocwen's motion.

## Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). The following are the Court's findings of fact and conclusions of law to the extent required by Rule 52 of the Federal Rules of Civil Procedure (the "Rules"), as made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

The Debtors filed a joint petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code") on March 4, 2014.  On their Schedules of Assets and Liabilities, the Debtors listed their Staten Island residence (the "Property"), encumbered by two secured claims, both held by Ocwen.  The Debtors' chapter 13 plan dated March 4, 2014 (the "Plan"), filed with the petition, provided that payments to Ocwen on account of the first

mortgage would be paid outside the Plan.  As to the second mortgage, the Plan provided that the

lien was "to be voided in an adversary proceeding" and the debt reclassified as a general

unsecured claim.  Ocwen received notice of the petition; the meeting of creditors, scheduled for

April 2, 2014; the Plan; and the hearing on confirmation, scheduled for May 14, 2014.

 Ocwen also received notice of the deadline to file a proof of claim, July 1, 2014.  Ocwen

did not file a proof of claim with respect to the second mortgage.[1]  The Debtors could have filed

a proof of claim on behalf of Ocwen, but they failed to do so prior to the statutory deadline. *See*

Fed. R. Bankr. P. 3004.

 The Debtors' complaint alleges that the Property is worth $477,000.00. Compl. 5, ECF

No. 1.  As evidence of value, the Debtors attach a Residential Appraisal Summary Report

prepared by Homeland Appraisals Inc., based on an interior and exterior inspection of the

Property conducted on February 12, 2014.[2] Compl. Ex. A, ECF No. 1-1.  The complaint also

alleges that a first mortgage, in the amount "of $486,846.56 consisting of $389,793.61 in

[p]rincipal balance and $97,052.95 in [d]eferred principal balance," encumbers the Property.

Compl. 5, ECF No. 1.  In support, the Debtors annex a Mortgage Account Statement for the first

mortgage, dated February 14, 2014. Compl. Ex. B, ECF No. 1-2.

 The Debtors assert that because the amount of the first mortgage exceeds the value of the

Property, the second mortgage, in the amount of  $111,061.00, is wholly unsecured, pursuant to

11 U.S.C. § 506(a), and thus not subject to the anti-modification clause of 11 U.S.C. §

1322(b)(2).  Accordingly, by operation of § 506(d), the second mortgage is not an allowed

secured claim, and the Debtors contend they can strip off the lien.

---

[1] Ocwen did not file a proof of claim with respect to its first mortgage, either.
[2] The appraisal gives the date of report as "02/14/13," which appears to be a typographical error, as the appraisal was conducted in February 2014, which was approximately one month prior to the bankruptcy filing date.

Ocwen filed an answer and, subsequently, the instant motion. Ocwen contends that because no party timely filed a proof of claim on account of the second mortgage, it cannot be considered an "allowed" claim, under 11 U.S.C. § 502. Generally, under § 506(d), liens that secure claims that are not allowed secured claims are void. However, Ocwen avers that the second lien is not void, because § 506(d)(2) excepts claims that are not allowed claims due only to the failure to file a proof of claim.[3] Furthermore, Ocwen contends that only "allowed" claims can be valued under § 506(a), and, absent a valuation, the Bankruptcy Code does not permit strip off of the second mortgage. Thus, Ocwen argues that the second lien must ride through the Debtors' bankruptcy.

## Discussion

### I.    Legal Standard

Rule 12(c), made applicable by Bankruptcy Rule 7012, states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In the interest of due process, courts sparingly grant such motions, limiting relief to circumstances "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988). In ruling on a Rule 12(c) motion, "the Court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences in favor of the non-movant." *Mennella v. Office of Court Admin.*, 938 F.Supp. 128, 131 (E.D.N.Y. 1996), *aff'd*, 164 F.3d 618 (2d Cir. 1998). Exhibits attached to the complaint may be considered in deciding a Rule 12(c) motion. *See Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001). It is the movant's burden "to show the absence of any material issue

---

[3] 11 U.S.C. § 506(d)(2) provides in pertinent part: "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim . . . ."

3

appearing genuinely to be in dispute." *Falls Riverway Realty, Inc. v. City of Niagara Falls, N.Y.*, 754 F.2d 49, 54 (2d Cir. 1985) (citing *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).  "[A] defense of failure to state a claim may be raised in a Rule 12(c) motion for judgment on the pleadings, and when this occurs the court simply treats the motion as if it were a motion to dismiss. *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., Div. of/& Am. Home Prods. Corp.*, 850 F.2d 904, 909 n.2 (2d Cir. 1988).

Under Rule 12(b)(6), made applicable by Bankruptcy Rule 7012, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable . . . ." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A complaint must allege enough facts to "nudge[ ] [the] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678.   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557).  In ruling on a motion pursuant to Rule 12(b)(6), the Court may consider the complaint, documents attached to the complaint, documents incorporated into the complaint by reference, and matters subject to judicial notice. *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir. 1991).  The Court accepts factual allegations in a complaint as true and draws all reasonable inferences in favor of the non-movant. *Roth v. Jennings,* 489 F.3d 499, 501 (2d Cir. 2007).

A motion for summary judgment, governed by Rule 56, made applicable by Bankruptcy Rule 7056, also disposes of a case before trial; however, it allows parties to advance their

arguments with limited evidentiary support, including "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A motion for summary judgment should only be granted when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Factual inferences are drawn in the nonmoving party's favor. *Ford v. McGinnis,* 352 F.3d 582, 587 (2d Cir.2003).  Summary judgment is warranted when no genuine issue of material fact exists, and "based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998).

## II.    Analysis

Although the Debtors' complaint does not cite *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2d Cir. 2001), it is premised on the rule adopted by the Second Circuit in that case.  *Pond* reads § 506(a) in conjunction with § 1322(b)(2) to conclude that within the context of a chapter 13 case, a second mortgage on a debtor's primary residence wholly unsupported by any equity in the property may be voided. *Id.*  Section 1322(b)(2) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 1322(b)(2).  In other words, a chapter 13 debtor may not alter the rights of a creditor that holds a secured interest in the debtor's principal residence. *Id.*  However, the *Pond* court reasoned that if a second mortgage on the debtor's principal residence is determined to be wholly unsecured after application of § 506(a), then the creditor does not hold a secured interest in the debtor's principal residence, and the debtor is entitled to alter its rights in the chapter 13 plan by stripping off the second lien. *Pond*, 252 F.3d at 126.

Ocwen does not dispute that this is the prevailing law in the Second Circuit. Instead, it argues that only proofs of claim filed on the claims register may be valued under § 506(a) and stripped off under *Pond*. Owen is incorrect—§ 506(a) values the collateral, not the lien.

The *Pond* decision provided that "to determine whether a lien is 'secured' under Section 506(a), a court must examine the value of the collateral underlying a lien, not the value of the lien itself." *Pond*, 252 F.3d at 127. The logic behind the *Pond* court's reasoning is that "[t]he value of a lien could differ from the value of the collateral underlying that lien for a variety of reasons, such as the state-law rights that attach to the lien but not to the collateral, or the costs associated with collecting on the lien." *Id*. at n.5. A court must therefore look first to the value of the Debtor's principal residence and compare it to the amount of the first lien. *Id*. at 127. If no equity remains after applying the value of the first lien, then the second lien is "wholly unsecured under Section 506(a)." *Id*. Nowhere in this process is the court required to value the second lien. *In re Miller*, 462 B.R. 421, 428 (Bankr. E.D.N.Y. 2011) ("[T]o determine whether a lien is 'secured' under Section 506(a), a court must examine the value of the collateral underlying a lien, not the value of the lien itself.").

Consequently, lien stripping decisions since *Pond* reinforce this analysis, regardless of whether the junior lienor files a claim. In *In re Aubain*, the debtor scheduled a first and second mortgage on her primary residence. *In re Aubain*, 296 B.R. 624, 627 (Bankr. E.D.N.Y. 2003). The mortgagee holding the first lien filed a proof of claim, while the mortgagee holding the second lien did not. *Id*. at 627–28. The debtor moved to avoid the wholly unsecured second lien, and the creditor objected. *Id*. at 634–35. The court held that where the value of the property has been applied to the first lien, a second lien may be stripped where there is no collateral remaining to support any part of the second lien. *Id*. Other courts similarly applied *Pond* in the absence of a

proof of claim. *E.g. In re Shen*, 501 B.R. 216, 219 (Bankr. S.D.N.Y. 2013) (at the time court

entered order stripping wholly unsecured second mortgage, creditor had not filed proof of claim);

*In re Robert*, 313 B.R. 545, 547, 549 (Bankr. N.D.N.Y. 2004) (Although the holder of the second

lien had "not filed an objection to confirmation or a proof of claim" the court could "determine

the value of collateral, which secures an allowed claim, to ascertain what portion of the claim is

secured and what portion is unsecured."); *Green Tree Servicing, LLC v. Wilson (In re Wilson)*,

532 B.R. 486, 493 n.9 (Bankr. S.D.N.Y. 2015) ("Green Tree 'seeks to make a connection

between the filing of a proof of claim and the allowance of a creditor's lien where no such

connection exists.'") (citing *Christo v. Wells Fargo Bank (In re Christo)*, No. 12-30083, 2012

WL 3839238, at *6 (Bankr. N.D.Ohio Sept. 4, 2012)).

According to the Debtors, the value of the collateral is $477,000 and the first mortgagee

is owed $487,427.38.  If the amount owed on the first mortgage exceeds the value of the

collateral, there is no equity in the property beyond the first mortgage.  The analysis is complete;

the second mortgage is wholly unsecured and may be stripped off by operation of *Pond*.  The

fact that no proof of claim was ever filed is irrelevant.  No determination is needed as to whether

the second mortgage is an allowed claim under § 502, or whether it may be valued under §

506(a).  The only valuation to be performed, according to *Pond* and the relevant case law, is of

the collateral.[4]

It is therefore similarly unnecessary for a debtor to file a proof of claim on behalf of an

unsecured second lienholder for the sole purpose of instituting an adversary proceeding to strip

that lien.  There is at least one example of a case in this district where a debtor filed a claim on a

---

[4] Ocwen also argued that its second lien is not void under 11 U.S.C. § 506(d), contending that the only reason its claim is not allowed is because it did not file a proof of claim.  However, the failure to file a proof of claim would not be the reason why Ocwen does not have an allowed secured claim; rather, the value of the Property and the amount of the first mortgage are dispositive.

creditor's behalf for just this purpose. *See In re Renz*, 476 B.R. 382, 388 (Bankr. E.D.N.Y. 2012) ("Debtors clearly filed the [proof of claim] so that they could initiate the Adversary for the express purpose of avoiding the . . . Mortgage and reclassifying the . . . Claim as unsecured"). However, in *Renz*, the court explicitly stated that it "need not and therefore does not reach the issue of whether a claim has to be filed by or on behalf of a purported secured creditor for a debtor to initiate an adversary proceeding to determine the extent, validity, priority and/or lien status of a lien filed of public record." *Id*. at n.8.

Therefore, the fact that the Debtors did not file a proof of claim on behalf of Ocwen is not fatal to the complaint.  Despite Ocwen's opposition to the contrary, a wholly unsecured second mortgage on a debtor's principal residence may be stripped off without any proof of claim on file.

### Conclusion

For all the reasons stated above, the fact that a proof of claim was not filed on account of Ocwen's second mortgage is not dispositive of whether the Debtors are permitted to strip off the junior lien.  Accordingly, Ocwen's motion is denied.  A separate order will issue.



Dated: September 30, 2015
      Brooklyn, New York

Nancy Hershey Lord
**Nancy Hershey Lord**
**United States Bankruptcy Judge**